Our last case today is 4-11-0-0-1-7 Board of Education of Niles Township High School District 219 v. Board of Trustees Teachers' Retirement System For the appellant is Anthony G. Scariano and John J. Murphy  You just did the rebuttal, sir? Okay. And for the appellee is Ralph Lowenstein. Before we begin, I want to thank all counsel for your willingness to change your schedule to accommodate our schedule. We appreciate that and it's going to save us some time, so thank you all. Okay, without any further ado then, Mr. Murphy, you may proceed on behalf of the appellant. Thank you. Good afternoon. Counsel? As I begin my remarks, I would like to remind the court what this court said in a decision two years ago in TRS v. West, that pension statutes are to be construed liberally in the favor of the rights of the pensioner. That was from the West case from two years ago. There were two things that happened in this case. The first thing that happened is that TRS took away service credit that Superintendent Caddell earned pursuant to the Chicago Teachers' Retirement Fund. It took that four-tenths of a year away, and by taking that four-tenths of a year away of the unused sick leave time, it caused a $400,000 penalty to be issued against the school district. And the second thing that happened is that once TRS realized they couldn't do that, that they had no authority to take away another retirement agency's pension credit, it then belatedly, after the fact, said, no, we didn't really take away Chicago's time, we took away our own time. And they can't do that either, and that's the West case. Because of the West case, they can't do that. So the first issue is, I guess it's a fact issue, did indeed they take away Chicago time? All you really have to do is look at two documents. The record at page 176 is a reciprocal benefit estimate. It's dated September 6, 2005, and on that document it clearly says that the Chicago Teachers' Retirement Fund indicates that Mr. Caddell gained 11.336 years of service credit there. Three years later, in another estimate given to Mr. Caddell, it now says 11.3 is now down to 10.875. So it went from 11.3 to 10.8. That's a difference of .461. So they took away, these are TRS's own benefits, indicating in 05 we say it's 11.3, in 08 we say it's 10.8. They took away 4.6. They can't do that. Relatedly, their argument now before the court is that they point to, on the record, in 268, an email correspondence between a claims analyst, Jennifer Beavers for TRS, where she inquires to her, apparently her counterpart at Chicago, saying that, just confirming to make sure that we're using the correct amount that you have given us, which was going back to the 11.3. So indeed, Chicago has maintained all along that Mr. Caddell's entitled to 11.3. That's what the February 09 email shows. The October 2008 document clearly shows that TRS took away that four-tenths of a year. So can they do that? They can't. They're a creation of statute. They only have the authority given to them by the legislature when the legislature created TRS. There is nothing in the TRS law or any of the rules and regulations that say that TRS can tell Chicago we're only going to accept, we're not going to accept the time that you gave him credit for his sick leave. And that's what the 4.46 is. To do so would be, besides not having the authority, it would be a violation of the Reciprocal Act. If you look at the language of the Reciprocal Act, the purpose of the act is to assure full and continuous pension credit of all service, which is covered by a retirement system. That's Section 101. Section 109, a pension credit is defined as a credit acquired by an employee in the form of service as defined by the law governing each of the systems in which he has credits. The Chicago system allowed Mr. Fidel to gain 0.4% of a year service credit because of his unused sick leave. And the Reciprocal Act says that if it's acquired as defined by the law governing the system, according to the Chicago system, he's entitled to that 0.4. And again, somewhat repetitive, Section 121 says, a proportional retirement annuity shall be computed by each participating system in which the pension credit has been established on the basis of pension credits under each system. So it repeats that same thing. That each system determines for itself how to determine service credit. Chicago said he's entitled to 11.3, and combine that with the TRS time, he then had excess of 35 years of service credit and could retire without a penalty. By taking away the 0.4, he no longer had 35 years of service credit and therefore incurred the penalty. So TRS isn't entitled to take away the Chicago time. What's TRS's theory on why they were able to do this? Did you argue with them about this? Well, they now claim in their briefs, but the record doesn't support it, and that's why I opened my argument with it. They now argue because of that. They point to their email correspondence and say, well, look, we allowed Chicago to give us the 11.3. Chicago has always said 11.3. TRS hasn't accepted 11.3. We know that by looking at the October 2008 correspondence to both the superintendent, both the school district and the superintendent. So they weren't accepting it. But I think what Judge Steigman's asking you is under what theory are they not accepting it? Well, they didn't have a theory. What they now claim is that they shorted themselves. They now claim, although the facts don't support it, they now claim, oh, no, we accepted Chicago's 11.3. What we did was take away 0.46. So they changed their position from earlier? Yes. Did they do that before they wrote their brief in this case? Yes. They did it, but Mr. Fidel retired December 2008. The first indication that they changed that is they point to an email from February 2009. So as the facts of this case developed, they changed their position. The correspondence in 05 and 08 says we're only going to accept 10. We're not going to accept the service credit. But what they now claim still doesn't apply, and here's why. Under the West case, what they're trying to do is this. The statute for the TRS statute says that you shall earn optional credit for each member. Each member shall receive optional credit for days of unused sick leave, subject to a maximum of two years service credit. It says that. There's no exception to that. What they're trying to read into this is an exception that says we'll give you two years unless you earned unused sick leave in another system and you cashed it in, and therefore we're not going to give you the two years which we say we're going to give you, according to the statute, we're going to take it away from you. Because what they did is they take away the .46. They claim now they credited Chicago with the .46, but they took it away from their own two years. Mr. Fidel earned two years under TRS. There's no question of that. But TRS took it upon themselves to take away the .46 that they claim Chicago should have taken away. They now take it away. They can't do that. In your West case decided by this court two years ago is why they can't take it away. In West, the retiree West wanted to combine his CSRS credit with a TRS credit to get to 20 years. Because the CSRS credit was only less than one year, the Reciprocal Act says you can't combine, you can't use less than one year of service credit except there's an exception. The exception is unless you are transferred or are transferred to another system, in this case TRS. TRS read into that that the transfer had to be an involuntary transfer pursuant to a legislative action. They read that somehow into the statute. This court said you can't do that. That's not what the language of the statute says. The language of the statute says that it can be a transfer, which indicates a voluntary transfer, or are transferred, which is an involuntary transfer. TRS focused on it has to be an involuntary transfer, ignoring the voluntary word transfer. What the retiree was trying to do to reach the 20 was once he realized he worked seven months under CSRS and he realized that he could qualify for a TRS pension, so he voluntarily transferred pension systems. TRS took the position that the statute says it had to be an involuntary transfer. This court said it's not what the statute says. The statute says transfer or are transferred. In this case they're trying to do the exact same thing. They're trying to read something into that two years that simply isn't there. The statute says you can use your days of unused sick leave subject to a maximum of two years service credit. There's no exception in there. It doesn't say unless you used sick leave credit from the Chicago or some other system, and therefore if you do, we're going to short you that amount of time to make sure that you get less than two years total. It's not what the statute says. Let's do some questions. What accounted for TRS dropping the ball here do you think? I think initially that the claims analyst had it right that they're entitled to the Chicago time and entitled to the full TRS time. At some point as it got closer to Mr. Fidel's retirement, someone just figured that, well, you can only have two years combined from all the systems, and that the TRS statute rules. Now, TRS doesn't have any authority over anybody on the other pension system. So one way or another, they took that Chicago time away. Whether they took it away directly from Chicago as the October 2008 estimate indicates, or even if accepting their own theory as being true, they still took away that Chicago time because they shorted their own time by the exact amount of time that Chicago claims he was entitled to, which is that 0.4 percent, four-tenths of a year. But either way, they took it away from Chicago. They're not allowed to do that. Now, somebody's idea was, and as far as we know, we've looked for other cases. We haven't seen any of the cases, either reported or unreported. The only way we find out is if it's reported, obviously. We saw no cases wherein TRS took this position, that the combined unused sick leave service credit can only be two years, and you can't use someone else's time. Okay. Well, thank you, counsel. We'll hear from your side on rebuttal. Mr. Lowenstein? Thank you. I take it you think TRS did not drop the ball? No. We have a little bit different view of the situation, as the court might guess. Was there anything worthwhile in your opponent referring to the West case? The West case had such unusual facts that it really has, I would say, very limited application other than just the general language about what the purpose of the pension acts are, which doesn't have anything really to do with the matter before you. You spent a lot of time talking about it. You don't even mention it in your brief. I don't mention it in the brief because, quite honestly, I think the facts were so unique in that that it doesn't really have anything to do with the outcome of this case. He didn't mention the facts. I guess he just mentioned the general position, the interpretation. Yes. And we don't dispute the general interpretation, but it doesn't have any application to this case, and let me tell you why. Let me point out first, I want to hear why, but also indicate that you don't say anything in your brief that says they were incorrect in their reference to West. I did not address the West case in our brief because I think that the West case, while it states the general principles, which are taken from a lot of different things, they don't have any application to this particular case. That's the reason why I didn't mention it. It had very, very unique facts in that case. If I remember correctly, it had to do with whether a person could transfer from one system to the other, whether it had to be by a legislative enactment or whether it could be done otherwise, and the court said that there wasn't anything in the statute which required to be done pursuant to a legislative action. But that doesn't have anything. It's not even remotely related to the case before you. Case before you has to do with an interpretation of the Retirement Reciprocal Act and particularly with respect to how it might apply to the Chicago Pension Fund and TRS. Facts in this case are as follows. Mr. Codell was a superintendent in the Niles School District and as a result he had recruited service credit from the Niles School District in TRS. Previously he'd been employed in the Chicago Public Schools and he'd also accrued service credit in the Chicago Teachers' Pension Fund. Part of that included .461 years of service credit for unused sick leave. He retired at the end of the 2008 calendar year and at the time that he retired he was 57 years old and had less than 35 years of service credit. So at this point he had a choice to make. He could either take a greatly reduced retirement annuity because he had less than 35 years of service credit or he could make what's known as an early retirement payment without discount which is a one-time contribution that he could make to avoid having the reduction in his retirement. By making that election that obligated his last employer to make a much larger contribution. Codell made the contribution. He's not part of this and he's not part of the appeal. Niles Township High School District on the other hand appealed that and that's what's before you today. The reason that there was this dispute as to the number of years of service credit has to do with the TRS statute 16-127B6. And that particular statute says that a person can get up to two years of service credit for unused sick days. Because the combined accrued sick leave for the Chicago Public Schools and TRS exceeded two years, what TRS did was they reduced the amount of service credit that he had coming from TRS and took the full amount of service credit including the unused sick leave from the Chicago Public Schools. Is that what 20-124 says? I'm sorry? Is that what 20-124 says about combining? Yes. And that really is the heart of our argument. I can skip ahead to that part if you want me to address it. You may proceed. Okay. So this reduced him to less than 35 years or meant that he had less than 35 years of service credit. In this case, if you take a look at page 268 of the appellate court record, I think it's quite clear that we did not take away service credit from the Chicago Public Schools. We took away the service credit from TRS. So counsel is clearly wrong on that. He's basing his argument on a benefit estimate which was done in October 2008 which was later revised. And that benefit estimate is clear on its face that it is exactly what it says. It's a benefit estimate at the time which clearly was revised by TRS. So the factual finding by the Board of Trustees that we took away service credit from TRS with respect to the unused sick leave rather than the Chicago Teachers Pension Fund is not against the manifest weight of the evidence and I don't think supported at all by the record. But wasn't it undisputed that he had accumulated two years of sick leave under TRS? Yes, he had. So what part of the statute gives TRS the authority to reduce that? You led right into what I was going to say next. This has to do with an interpretation of Section 20-124 of the Reciprocal Act as Justice McCullough was talking about. And that particular section is entitled Maximum Benefits and it says as follows. In no event shall the combined retirement or survivor annuities exceed the highest annuity which would have been payable by any participating system in which the employee has pension credits if all of his pension credits had been validated in that system. So, if all of the pension credits in this case had been validated in TRS, Mr. Codell would have been limited to the two years of service credit for unused sick days. But for the ERO contribution, that would have meant that his pension benefits would have been severely reduced. And as I said earlier, once he made the election to do the ERO contribution, it was mandatory on the part of his last employer to make the contribution that's part of this appeal. If the board argument was accepted in this case, Codell would receive a higher annuity than he would have received if all of his service credit had been earned in TRS, which would be a clear violation of Section 20-124. The board's argument in this case is that 20-124 speaks of a retirement annuity rather than service credit. But the fallacy with this argument is that the retirement annuity is based in part on the amount of service credit. You really can't separate the two. The retirement annuity that Mr. Codell received of 75 percent wouldn't have been paid, using the language from the statute, by any participating system, in this case TRS, without the ERO contribution. Well, wouldn't it have if you gave him the full credit of a sick leave in both systems, though? I'm sorry? Wouldn't the total 75 percent have been paid to him if you credited him with the sick leave in both systems that he was entitled to? But, see, he would not have been able to get the 75 percent if he hadn't made the ERO contribution, because it would have been greatly reduced without that. Well, that's only because you took the sick leave away, isn't it? Well, we didn't take the sick leave away. Our statute limits the amount of unused sick leave that a member is entitled to. That's your theory of the case. That's right. But what I'm saying to you is, if you hadn't reduced the creditable sick leave due to him, he would have had more than 35 years and would have had the maximum pension under the system, wouldn't he? Correct. So it's only because you took that away that he didn't have the maximum pension. That is correct. But then we go back to the language of 20-124. He could not, under 20-124, you can't get, it says, in no event shall the combined retirement annuity exceed the highest annuity, which would have been payable by any participating system in which the employee had service credit, if all of his pension credits had been validated in that system. So what does that mean? Well, what it means to me is that Section 20-124 essentially says, let's assume for the sake of discussion that he had actually received all of his service credit in TRS. If he had done that, he was limited to the two years and he couldn't get a retirement annuity more than if he had gotten it all in TRS. And that's exactly what we did. We eliminated the amount of sick leave, unused sick leave, that could be credited to the two years allowed by our statute. Take a look at the last line of 20-124, and I think that that really is the key to the outcome of this case. Is the statute in your brief? The statute is, yes. I'm pretty sure that it's right on page 1. I really do think that in this case the outcome of your decision is going to depend upon how you interpret Section 20-124. And quite honestly, in my mind, there's really little serious argument to dispute that. But let's assume, I'm sorry. Can I just ask you, isn't 20-124 saying no matter what, no matter how many years you have in either system, if you're using the reciprocal system, your pension benefit in his case can never exceed 75% of his, whatever you're figuring the pension again. Well, he wants to split that out, but you can't compute a retirement annuity without looking at the service credit, because the retirement annuity is based in part on the amount of the service credit that you have. But I mean, the way I'm reading 20-124, I just want to see if I'm reading this correctly. It's just basically saying, in general, you just can't get more than the maximum pension for your pension system you're claiming it under. So in other words, in TRS, you're limited to a maximum pension of 75%. Right. Your combined pensions, if you're using the reciprocal system, can't exceed that maximum. Well. Isn't that right, or no? It does, in part. In part I agree with you. But I read 20-124 to mean that, let's say that you were entitled to 65% or whatever. You can't get more than you would have been entitled to if you'd gotten it all in one system. If Mr. Fodell had been exclusively in TRS, he would have been limited to two years of unused sick leave. No, it doesn't say that. What it says is your annuity cannot exceed the highest annuity available. It doesn't say anything to do with crediting sick leave. I mean, I don't see that there. But you can't compute a retirement annuity without the service credit, because the service credit drives, in large measure, the computation of the retirement annuity. But as long as that retirement annuity, as computed, doesn't exceed the 75% that would be the maximum under TRS, isn't that the issue we're looking at under 20-124? I don't see anything in there about the creditable sick leave or anything to do with that. It's just like, let's say I had time under IMRF and I have time in the judicial pension system, but I don't have enough time to draw a separate pension from each system. I'm going to use the reciprocal. I couldn't exceed 85% of my salary in pension. So maybe if I stayed 25 years, I'm not even going to use my time in IMRF. I won't be able to draw anything or use it in the reciprocal system, because if I did, it would exceed 85%. I think that's what 20-124 is saying. Well, I respectfully believe that it goes beyond that for the simple reason that you can't compute what a person would be entitled to for retirement annuity without looking at their service credit. Because it's not just a matter of not exceeding the 75%. Section 20-124 really goes to the amount of retirement annuity that anybody would be entitled to at any given point in time. It doesn't just say you can't get more than 75%. It says you're not entitled to draw a retirement annuity more than you would have gotten if you had had all your service credit in one system. So let's say that somebody had 20 years of service credit, and that's multiplied by the percentage. Well, if they had gotten all of their service credit at that point in TRS, you have to take into consideration the amount of sick leave that they would have accrued, and there's a limitation on that. Now, if he had worked 11.33 years in the Chicago public school system, he'd get his full two years of credit for the unused sick leave in TRS. You're saying because he was credited with some sick leave under CPS, he can't use that towards his time in CPS. Yeah, if he hadn't had any sick leave accrued in the Chicago Teachers' Pension Fund, this case wouldn't be before you. If he just worked the 11.3 years in Chicago, the limitation we're talking about wouldn't apply. But even under the CPS system, they say if you have unused sick leave, we'll credit it towards your time up to a certain amount. Right, 244 days. There's another reason why I believe that we're entitled to have the decision of the Board of Trustees affirmed, and that has to do with Section 20-130. And that's also in the same page in our brief, and that has to do with conflicts between this article, meaning the Reciprocal Act, and the articles governing the participating system. And it says if any of the provisions of this article are inconsistent with the provisions of the article governing any participating system, the provision shall, if possible, be interpreted as to give effect to the purpose of both articles. However, if this is not possible, the provisions of the article governing the participating system, with the exception of those covering suspension of benefits upon return to employment, which of course don't apply, shall control. So if you find that there is some inconsistency between the limitation of two years in TRS and the Reciprocal Act, then the Reciprocal Act says, will you go back to and interpret this according to the participating system, which in this case is TRS. So that takes you directly back to applying the two-year limitation that we have in our system, which I think makes their argument even less appealing. They haven't addressed the estoppel issue, and if they've abandoned it or the court doesn't think that's important, I'll just skip over it. If you want me to, I can address that as well. All right. The elements of estoppel are as follows. There has to be an affirmative act on the part of the public entity, an inducement of substantial reliance by a party to its detriment due to the entity's affirmative act, and the affirmative act must be that of the public body itself, rather than an unauthorized act of a ministerial official or an inadvertent mistake. The affirmative act that they're relying upon in this particular case is once again a benefit estimate that was done in September of 2005 over three years prior to Mr. Kodell's retirement. And that benefit estimate was presented to the member, not to the Board of Education, his employer. TRS was never contacted by the employer to discuss his retirement date, his service credits, or his benefits, nor did we provide any information to the Board of Education. TRS was also not a part of any discussions that might have taken place between Mr. Kodell and his employer. So what this means is that estoppel fails for a number of different reasons. The benefit estimate was just what it says, it was a benefit estimate of retirement some three years prior to the time of the retirement. No representations were made to the Board of Education, and certainly they couldn't have relied upon any representations because we didn't make any. And finally, the projections in the benefit estimate weren't made by the Board of Trustees or one of its administrators, they were made by a ministerial employee, and therefore they're not binding upon the Board. Estoppel is meant when it deals with a public entity to deal with a very narrow set of circumstances. Fraud to prevent substantial injustice, neither one of them applies in this particular case. For these reasons, we ask the Court to affirm the decision of the Board of Trustees. Okay, thank you, Counsel. Mr. Scariano? Please, the Court will rely on our arguments in the brief on the estoppel issue because I have five minutes to answer Justice Pope's interrogations of Mr. Lowenstein. The simplest solution to this case is for my friends from PRS to walk across the street three blocks and have the legislature amend I have to speak up a little louder to amend Section 20-124 of the Reciprocal Act by adding one sentence. Nothing in this act shall be deemed to liberalize benefits to the point where a member can get more benefits from one system than he can by the limitations in another. That language doesn't exist. It does not allow TRS to promulgate rules and their own rulemaking, the Counsel talks about it, about how we interpret and apply the Reciprocal Reporting Act, isn't done pursuant to JCAR. They made their own rule saying, hey, if Chicago was going to put them over a maximum of two years' sick leave benefits, we're going to deduct from our leave that you've earned, bona fide in our system, an amount to get you below the maximum two years of credit. That's a rule they didn't have the authority to promulgate, and they didn't promulgate according to JCAR. They willy-nilly applied their own determination to reduce this man's pension by the exact amount necessary to get him under the limits so that the Board of Education, in this case, would have to spend $400,000 to retire him without penalty about 59 days prior to the termination of when he could have worked and not had a penalty at all. Clearly, the Reciprocal Act states as its purpose, the purpose of this plan is to assure all full and continuous pension credit for all service in the pension employment which is covered by a retirement system. When TRS adopted the Reciprocal Act, they didn't make one change in the Reciprocal Act when they adopted it into the TRS statutes. There they could have said, however, we're not going to allow an employee to piggyback credits that we wouldn't otherwise allow under our system. Well, where is Mr. Lowenstein incorrect in his analysis to this Court? Where was he correct? Incorrect. Well, I would say he's manifestly correct when he said they applied their own rule to denying Mr. Cordell the benefits out of the Chicago Teacher Retirement Fund. He wants to argue the way you read the Reciprocal Act is service credit means the amount of money you get. Well, it only applies to the annuity you get. It only says you can't, no matter what happens under the Reciprocal Act, you can't use reciprocal benefits to increase the pension more than 75%. That's what 120 says. Well, you heard Justice Bump's question about using an example of her own pension situation. Is that what your position is? Exactly. You cannot increase in TRS by taking reciprocal benefits the maximum annuity you're allowed under TRS. And the maximum annuity is 75% of the highest four out of the last consecutive ten averages of your salary. And that's what happened in this case. Is that what Section 120-124 means? No, it means it's plain words, Your Honor. I may be playing to you, Counsel, but this is like half Chinese, half Greek to me. Luckily, appellate court judges get to blame the legislature. Walk me through it one more time. One more time is the legislature could have solved this problem by saying in no event can the application of the reciprocal benefits law be deemed to increase an employee's otherwise benefits denied under one system. The only thing it denies... So that's what it could say, it should say, but what does it say as written without that sentence? In no event shall a combined retirement, survivor's annuities exceed the highest annuity. He can't get more than 75%. That's the only limitation. They could have put more limitations on her. Or TRS could have, under its rulemaking authority, said, we're going to promulgate a rule as we adopt, as they did adopt in total, the reciprocal act into the TRS statute. They could have said, we're going to adopt a rule, and here's what the rule is. If you get more than 340 days from your combined systems, we're going to reduce the amount of sick leave you earn in TRS artificially to get you the maximum of 360 days. That's what they did in this case. They took the man's earned sick leave that he earned at TRS being granted for, and said, you no longer have it. What is the authority to do that? It doesn't come from TRS statutes, or the reciprocal act. You believe they were wrong in doing that? There's my kind of strange question. Why did they do it? Permitting me to go divorce the record? Yeah, what's going on? Why would they not agree with your interpretation? It costs them money, of which they have precious little, and of which they're trying to be parsimonious about the benefits they pay, especially a high-paid superintendent whose Board of Education has to give him $400,000 to get this man what they promised him, and what TRS said he was entitled to, on field laws. Thank you very much. Thank you, counsel. We'll take this matter under advisement and be in recess.